## South *against* Denniston.

An action on the case for the seduction of a daughter, is founded exclusively on the relation of master and servant, not parent and child; and the gist of it is consequential loss of service. Hence, a widowed mother cannot maintain the action.

WRIT of error to the court of common pleas of *Alleghany* county.

This was an action on the case by Sarah South, the plaintiff in error, against Joseph Denniston, for the seduction of her daughter, Amanda South. The action was instituted by the mother, who was a widow, during the minority of the daughter. The latter went to live with the defendant's father at the age of eleven, and continued there until her seventeenth or eighteenth year, when the seduction took place, and she was begotten with child by the defendant. She continued to live at the house until the month of June following, when she returned to her mother, with whom she lived until the child was born, in November following. Her mother attended her during her lying-in sickness, previous to which, and after her return, she assisted her mother about the house. The court below (Shaler,

[South v. Denniston.]

president) instructed the jury, that the plaintiff was not entitled to maintain the action.

This was the subject of the assignment of error.

*Fetterman*, for plaintiff in error.

The only point in this case is, whether the mother, who is the only surviving parent, can maintain an action for the seduction of her daughter, while the daughter was out of her service, and under age? We contend that she can. Sargeant's case, 5 *Cowen* 106 ; Martin *v.* Payne, 9 *Johns.* 387; 1 *Salk.* 206 ; *Reeves's Dom. Rel.* 292 ; 2 *Penns. Black.* 541.

*Metcalf*, for defendant in error.

It is not denied that an action for the seduction of a female under legal age may be sustained by *any person*, who, *at the time* of the seduction, stands in the relation of *master*, either in *law* or in *fact*, to the female seduced. Martin *v.* Payne, 9 *Johns.* 387. So a father may maintain an action for the seduction of his *minor* daughter, even though at the time of the seduction she do not reside with him, if he have not parted with his *paternal* right and authority to control her person and enjoy her services. For so long as that right and authority are vested in him, in *judgment of law*, the relation of master and servant exists between him and his daughter. 2 *Wheat. Selw.* 845. But this constructive relation, even between *father* and *daughter*, only exists whilst the latter is in her *minority ;* for when the *right* upon which it is founded ceases, the *relation* also ceases. The same rule applies to any other person than the father, relative to *constructive* relation. Mickleson *v.* Stryker, 10 *Johns.* 115 ; Ream *v.* Rank, 3 *Serg. & Rawle* 215 ; Logan *v.* Murray, 6 *Serg. & Rawle* 176 ; Hornketh *v.* Barr, 8 *Serg. & Rawle* 38. It follows, then, as a natural consequence, that *no* person can maintain an action for the seduction of a female of *legal age*, unless the relation of master and servant exists *in fact at the time of* seduction.

It is presumed no one will contend that the mother can maintain this action upon any other relation than that of *mistress* and *servant*, in *contemplation of law ;* for that relation *did not* exist *in fact.* But it is believed to have been satisfactorily shown that *that* relation can *only* exist where the person suing has the right *at the time* of the seduction to control the person and services of the seduced. Had the plaintiff in this case that right? In Pennsylvania, a mother is not liable for the maintenance of her minor children. Commonwealth *v.* Murray, 4 *Binn.* 494 ; 1 *Black. Comm.* 453 ; 1 *Woodis. Lect.* 451 ; *Wood's Just.* 64. Nor has she the right to control their persons, receive the avails of their labour, or enjoy their services. She is, in *legal contemplation*, a stranger to her children. The kindred ties that exist between them entitle her to their reverence and respect ; but the *law* imposes not even *that* duty. Such is the situation of the plaintiff in this case. How, then, can she maintain this

[South v. Denniston.]

action? To enable her to do so would be overruling all the authorities cited; and I know of no adjudged cases, save perhaps one, which conflicts with the doctrine I contend for. The case excepted is that in 5 *Cowen* 106. The facts in that case, so far as reported, are similar to those in the case under consideration; and it is most remarkable, that the court, after explicitly adopting all the principles laid down in the cases above referred to, arrive at conclusions exactly the reverse. The court, in 5 *Cowen* 106, say, "the right of action is not founded upon the *relation* of *parent* and *child*, but that of *master* and *servant*, and when the *latter* relation does not exist, either *in fact* or *judgment of law*, the action *cannot* be sustained." In that case the relation did not exist *in fact*, and would not have existed *in law*, unless the *right* to control the person, and enjoy the services of the daughter, was vested in the mother. To constitute such a right in a mother, there must have been some special law in New York conferring it. No such law is referred to in the report of the case; but, in charity to the court that delivered the opinion, I am inclined to presume one; otherwise the opinion is absurd, and entitled to no weight.

*Fetterman*, in reply.

The mother, in case of the father's death, is entitled to the earnings of the minor children. Nightingale *v.* Withington, 15 *Mass. Rep.* 274. A mother is bound to support her pauper children. 1 *Sm. L.* 340. She is bound to support her minor children. 1 *Bl. Comm.* 448. Logan *v.* Murray, 6 *Serg. & Rawle* 176, was an action of trespass.

The opinion of the Court was delivered by

Gibson, C. J.—An action on the case for the seduction of a daughter is founded exclusively on the relation of master and servant, not parent and child; and the gist of it is consequential loss of service. By reason of a father's duty to educate and maintain his infant children, he stands in the place of a master to them while he retains the right of personal control, even as to such of them as are not under his immediate dominion. But if this right be divested or expired, the relation can be renewed but by actual service, which, to found an action for the interruption of it, must have existed at the doing of the act of which the interruption is a consequence; the difference between it and any other state of servitude being that slighter acts of service are evidence of it. If, however, the right of control be not finally parted with, its existence without actual service is a sufficient foundation for a title to the action; and the decision in Dean *v.* Peel, 4 *East* 49, that actual employment in the service of another without an intent to return to the father's protection, is fatal to an action in his name, has been justly repudiated, because his right to his daughter's service is independent of her will. But a mother, being at best in the category of a father who has parted with his

[South v. Denniston.]

right, can maintain the action but on proof of actual service at the time of the seduction. Not being bound to the duty of maintenance, she is not entitled to the correlative right of service ; and standing as a stranger to her daughter in respect to these, the relation of mistress and servant can be constituted between them but as it may be constituted between strangers in blood, save that less evidence would perhaps be sufficient to establish it. These are the fundamental principles of the action, deducible from all the authorities but Sargeant's case, 5 *Cowen* 114, and from that we are constrained to dissent. There it appears to have been decided that a widow whose daughter has been debauched while out at service under indentures of apprenticeship subsequently cancelled, might maintain the action on the ground that she had succeeded to the parental rights of her husband ; or else that the daughter was in her service at the time of the birth. But nothing is more sure than that a mother is not entitled to the service of her child by the common law ; and the decision therefore obviously rests on some statutory provision, devolving the parental rights of the father upon his widow, which is not in force here. Yet even that would seem to be inadequate to the maintenance of the action by a widow who had parted with her right without reservation or recall ; and even taking for granted that it reverted to her at the cancellation of the indentures, still it did not exist for the purpose of sustaining the relation of mistress and servant at the time of the seduction. The action was therefore not maintainable on the last ground according to the decision of the same court in Nickleson *v.* Stryker, 10 *Johns. Rep.* 117. But whatever may have been decided, it requires but little aid from authority to sustain a principle so palpable, as that a party cannot entitle himself to an action for what was no wrong to him, by employing a disabled servant. An action for loss of service would certainly not lie for beating one who was not in the plaintiff's service at the time, because it would be esteemed an act of folly in him to employ an unfit person ; and it must necessarily be indifferent, in point of principle, whether the unfitness were caused by beating or impregnation. It was so considered in Logan *v.* Murray, 6 *Serg. & Rawle* 175, where the daughter had come pregnant into the mother's service, after the death of her father, in whose service she had been debauched. As to the child-bed expenses, assuming that the mother is liable to bear them (though we certainly have no law for it), these, though proper to swell the damages, are not a substantive ground of the action, as was held in Logan *v.* Murray ; and as to the argument so earnestly pressed upon us, that she is entitled to compensation for the increased risk of becoming chargeable for the daughter's maintenance as a pauper, it is enough to say that it would make the mother's right depend on the contingent inability of the daughter to maintain herself, which is not the foundation of the action by a father, whose duty to maintain is an immediate one, and independent of all consideration of the child's own means. Beside, the principle would give the

[South v. Denniston.]

same right of action to the daughter for the seduction of the mother, and might, under circumstances, entitle the servant for damages for the impregnation of her mistress. That would be an inversion of the principles of the action laid down by this court in Hornketh *v.* Barr, 8 *Serg. & Rawle* 39 ; the authority of which is amply sufficient to sustain the decision of the court below. The daughter residing in the family of the defendant's father at the time of the seduction, could in no respect be considered her mother's servant ; and her subsequent acquirement of the character, if she ever did acquire it, could not vest in the latter a title to the action.

Judgment affirmed.